IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 0 2021

CLERK, U.S. DISTRICT COURT
By_____
      Deputy

KEVIN FOSBERG,                    §
                       §
      Plaintiff,             §
                       §
VS.                               §   NO. 4:20-CV-126-A
                       §
TRICAM INDUSTRIES, INC.,          §
                       §
      Defendant.             §

<u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the motions of defendant, Tricam

Industries, Inc., to exclude testimony of Mark Hood ("Hood") and

Philip Rosescu ("Rosescu"). The court, having considered the

motions, the responses of plaintiff, Kevin Fosberg, the replies,

the record, and applicable authorities, finds that the motions

should be granted.

I.

Nature of the Case

This is a products liability action. Plaintiff alleges that

a Gorilla ladder, Model No. GLA-5X, manufactured by defendant

("the ladder"), was defectively designed and manufactured.

Specifically, during use of the ladder one of its legs buckled

inward and collapsed, which resulted in plaintiff falling to the

ground and striking his head and body on the floor and
sustaining severe and permanent injuries. Doc.[1] 1.

## II.

## Grounds of the Motions

Defendant maintains that neither of plaintiff's experts is
qualified to testify in this action. It says that the reports
and testimony of Hood and Rosescu are inadmissible under Rule
702 of the Federal Rules of Evidence and Daubert v. Merrell Dow
Pharms., Inc., 509 U.S. 579 (1993), because:

a. they are unqualified to opine on issues of ladder defect
or causation;

b. they employed no methodology, much less a scientifically
reliable one;

c. they did not conduct any background research, testing,
or measurements;

d. they did not seek peer review of their theories;

e. they did not, and could not, calculate an error rate for
their theories;

f. their purely visual inspections without any testing are
not generally accepted as a method of determining defect or
causation in the scientific community; and

---

[1] The "Doc. __" reference is to the number of the item on the docket in this action.

2

g. their unreliable opinions would not assist the jury because they do not address whether the ladder was defective as required by Texas law.

III.

## Applicable Legal Principles

The court's gatekeeping obligation applies to all expert testimony. Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 147 (1999). Under the Federal Rules of Evidence, the court must ensure that all expert testimony or evidence admitted is not only relevant, but reliable. Daubert, 509 U.S. at 589. Thus, a party seeking to introduce expert testimony must show that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007)(quoting Fed. R. Evid. 702).

IV.

## Analysis

Plaintiff's experts Hood and Rosescu are apparently to testify as to the same matters. Plaintiff says that each is qualified to testify as to "the failed metal rivet" in the case

3

of Rosescu and "the failed ladder" in the case of Hood;[2] the opinions of each "on manufacturing defect are well founded;" and, the opinions of each "on safer alternative designs are readily admissible." Doc. 65 at i; Doc. 68 at i. The responses to the motions to exclude are virtually identical. In the "background" section of the responses, plaintiff describes generally the background of the experts and what each did. Doc. 65 at 1-5; Doc. 68 at 1-4. However, he does not cite the record to support any of his allegations, except in three inconsequential instances with regard to Hood. Doc. 65 at 3-4, nn. 1-3. The "argument and authorities" sections of the briefs are likewise baren of the types of citations the court typically receives—specific citations to the parts of expert reports necessary to support each proposition being addressed—in cases like this one. This despite the fact that the burden is on plaintiff to show that his experts are qualified and should be allowed to testify. Daubert, 509 U.S. at 592-93 & n.10.

Plaintiff apparently recognizes the deficiency of the expert reports of Hood and Rosescu as he includes declarations of each to support his conclusory allegations that their testimony should be admissible. He says each expert "goes into

---

[2] Plaintiff says he retained Hood, a materials and failure analysis engineer, to analyze the ladder and failed rivet. Doc. 65 at 1. He retained Rosescu, a professional engineer, to analyze the ladder and failed rivet. Doc. 68 at 1.

great detail in the attached declaration regarding the
methodologies he employed, the bases for his opinion, and his
training and experience utilized to author his opinions." Doc.
65 at 24; Doc. 68 at 22. However, the "great detail" could and
should have been provided in the expert reports, Fed. R. Civ. P.
26(a)(2)(B), which were due November 15, 2020. Doc. 18 at 11-12,
¶ 18. He has not made any attempt to show that the failure to
provide full information in the reports was substantially
justified or is harmless. Fed. R. Civ. P. 37(c)(1). Thus, the
information cannot be used here to bolster his response to the
motions. Id. See R.C. Olmstead, Inc. v. CU Interface, L.L.C.,
606 F.3d 262, 271 (6th Cir. 2010); Musser v. Gentiva Health
Servs., 356 F.3d 751, 758 (7th Cir. 2004).[3] Even if they could
be, the court is not persuaded that the declarations establish
the necessary qualifications to allow the testimony.

An expert must have sufficient specialized knowledge to
assist the jurors in deciding the particular issues in the case.
Kumho Tire Co., 526 U.S. at 156. Here, the first issue is the
alleged defect in the ladder. Other ladder cases are instructive
in establishing the type of credentials necessary for an expert
to be qualified to testify on this subject. They look to whether

---

[3] That defendant could have obtained the undisclosed information through its own efforts does not provide
substantial justification for plaintiff's failure to disclose it as required. Musser v. Gentiva Health Servs., 356 F.3d
751, 759 (7th Cir. 2004).

the expert has designed ladders, worked for ladder manufacturers, served on ANSI committees, had any other experience with the design or manufacture of ladders, published articles relating to ladder design, taught any courses on ladder design, or had any involvement with designing ladders. Sittig v. Louisville Ladder Grp., L.L.C., 136 F. Supp. 2d 610, 616 (W.D. La. 2001); Clark v. R.D. Werner Co., No. Civ A 99-1426, 2000 WL 666380, at *4-5 (E.D. La. May 18, 2000). See Eiben v. Gorilla Ladder Co., No. 11-CV-10298, 2013 WL 1721677, at *11 (E.D. Mich. Apr. 22, 2013).

Here, plaintiff does not dispute that Rosescu has never designed a ladder or worked for a ladder manufacturer, published articles related to ladder design or manufacture or causes of ladder falls, testified as an expert in any other cases involved allegedly defective ladders, or conducted studies addressing ladder failure. He says that Rosescu has "investigated numerous ladder failures throughout his decade-long career," but cites only to Rosescu's c.v., which does not substantiate the allegation. Doc. 68 at 5; Doc. 74 at 2. Again, in trying to distinguish the cases cited by defendant, he simply refers to Rosescu's "extensive knowledge and experience," but fails to cite any proof that he has the qualifications necessary to testify in this case. Doc. 68 at 6-9. He refers to Rosescu's

6

"painstaking detail to describe and detail the rationale behind
his opinions, as outlined in his report," id. at 7, but does not
cite to the report, much less where the report establishes his
qualifications as they relate to this case. The report reflects
that Rosescu has "conducted investigations and analyzed more
than 5,000 accident cases in the past 10 years, including dozens
of incidents occurring on ladders." Doc. 74 at 6. There is no
description of what an "incident" occurring on a ladder might
be. That such "incidents" might count for as little as one-half
of one percent of Rosescu's accident investigations does not
persuade the court that he is qualified to testify.

As for Hood, plaintiff does not dispute that his
professional experience relates primarily to U.S. Navy aircraft
and to automobiles; he has never published opinions or articles
related to ladder design, manufacture, or causes of ladder falls
or failures; he has not testified as an expert in cases
involving defective ladders or inadequate quality control
procedures in the ladder industry; and, he has not designed a
ladder or worked for a ladder manufacturer, or had any accident
reconstruction experience related to ladders. Plaintiff points
to Hood's knowledge, skill, training, and experience in the
areas of deformation of materials, failure mechanisms, and root
causes of failure and says they make Hood "particularly

7

qualified to testify about the failure of the subject ladder,"
Doc. 65 at 7, but cites no authority for Hood's expertise in
failure mechanisms and root causes of failure.[4] As was the case
with Rosescu, plaintiff makes the conclusory allegation that
Hood "has gone to painstaking detail to describe and detail the
rationale behind his opinions." Id. at 8. He claims that Hood
"studied various peer-reviewed literature," but Hood's report
simply includes in a section titled "literature reviewed" the
description "reference materials." Doc. 73 at 18. Plaintiff
refers to Hood's "extensive knowledge and experience in failure
analysis" but does not cite to the report. Doc. 65 at 9. The
court is not persuaded by his attempt to distinguish Hood from
the experts in Sittig. Simply alleging that the "contrast
between the qualifications of the excluded experts in Sittig and
those of Mr. Hood could not be more apparent" does not meet the
test. Doc. 65 at 9.

Plaintiff says that Hood is more like the expert in Nixon
v. Krause, Inc., No. 3:00-CV-0915-L, 2003 WL 26098644 (N.D. Tex.
Aug. 29, 2003), who was allowed to testify in an extension
ladder case. Doc. 65 at 10-11. In Nixon, the expert was a Ph.D.
and had taught seminars in design and safety, had written an

---

[4] He cites Hood's c.v. to support the contention that Hood possesses knowledge, skill, training, and experience in the areas of fasteners and joints and deformation of materials. Doc. 65 at 6.

article on "Minimizing Extension Ladder Slide-Out Accidents,"
which was presented four years earlier at an ASAE/CSAE annual
international meeting, and he was familiar with defendant's
ladders and the ANSI standards for metal articulated ladders.
2003 WL 26098644, at *5. Hood has none of those qualifications.
It does not appear that he has taught; none of his presentations
concern ladders; the most recent presentations were in 2014 and
concerned trailer-mounted awnings and automotive ignition
switches; and, his publications were in 2002 and 2004 and do not
appear to be pertinent to this case. Doc. 73 at 8-12.

Plaintiff also refers to Cummins v. BIC USA, Inc., No.
1:08-CV-00019, 2011 WL 1399768 (W.D. Ky. Apr. 13, 2011), where
Hood was allowed to testify. Doc. 65 at 11. There, the testimony
"only relate[d] to comparing BIC's previous one-piece design to
the J26's two-piece design." 2011 WL 1399768, at *7. The issue
was the amount of effort required to remove the child safety
feature from each. Id. The case is not on point or persuasive
here.

Even if an expert is qualified, the expert's testimony must
be reliable at every step or else it is inadmissible. Knight v.
Kirby Inland Marine, Inc., 482 F.3d 347, 355 (5th Cir. 2007).
Where, as here, an expert has prepared an opinion solely for
litigation, the court applies the Daubert factors more

9

rigorously. Johnson v. Manitowoc Boom Trucks, Inc., 484 F.3d 426, 434-35 (6th Cir. 2007). The existence of sufficient facts and reliable methodology is mandatory. Hathaway v. Bazany, 507 F.3d 312, 318 (5th Cir. 2007). A witness must derive his theories from the scientific method, not subjective belief or unsupported speculation. Kumho Tire Co., 526 U.S. at 152. Thus, the court considers whether the theory has been tested, has been subjected to peer review or publication, has a high known or potential error rate, and is generally accepted in the relevant scientific community. Id. at 149-50. Neither Daubert nor Rule 702 requires a court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). See Viterbo v. Dow Chem. Co., 826 F.2d 420, 421 (5th Cir. 1987)(just because an expert says something is so does not make it so).

As plaintiff recognizes, proof of product failure, standing alone, is not sufficient to raise a fact question as to whether the product was defective or that is was defective when it left the hands of the manufacturer. Doc. 68 at 10 (citing Cooper Tire & Rubber Co. V. Mendez, 204 S.W.3d 797, 807 (Tex. 2006)). He then analyzes Mendez to argue that the evidence upon which Rosescu bases his opinion is sufficient. He does not, however, cite to any evidence to support the argument. Id. at 11-13. His

argument as to Hood is virtually identical, except that he does refer to two pages of Hood's report. Doc. 65 at 12-16.

Both experts started with the premise—based on a conclusory statement apparently prepared by plaintiff's attorney—that the "front left leg of the ladder in use unexpectedly buckled approximately 8 inches up from the bottom which caused myself and the ladder both to fall to the floor." Doc. 73 at 14. The problem with the statement is that it is wholly unsupported by the testimony of plaintiff and his wife. Plaintiff did not recall what happened and his wife did not see what happened. Doc. 56 at 57, 225. Significantly, plaintiff told paramedics that he fell off the ladder. Id. at 228-29. Nevertheless, assuming the statement had support, neither expert performed tests to determine whether the ladder could have buckled under normal use or whether such buckling would have caused plaintiff to fall on his back and strike the back of his head. Plaintiff does not dispute that Rosescu did not perform any tests or measurements to verify his theories. The tests that Hood performed confirmed that the ladder's metallurgy was not defective. Doc. 73 at 17. And, although Hood criticized the testing of the subject-type ladder, he does not identify the type of testing that should have been done or what it would have revealed. He did not perform any such testing. He did admit that

11

the ladder appeared to have met the minimum design criteria. Id. at 19. In sum, both Hood and Rosescu would testify that plaintiff fell off the ladder and the ladder is now broken, hence the ladder must have been defective. Such testimony does not meet the requirements of Rule 702 and is not admissible.

As for his theory of design defect, plaintiff must prove that (1) the ladder was defectively designed such that it was unreasonably dangerous; (2) there was a safer alternate design; and (3) the defect was a producing cause of his injury. Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc., 770 F.3d 322, 330 (5th Cir. 2014). A "safer alternate design" is one that would have prevented or significantly reduced the risk of plaintiff's personal injury without substantially impairing the ladder's utility and was both economically and technologically feasible at the time the ladder left the control of the manufacturer or seller. Id. at 331; Smith v. Aqua-Flo, Inc., 23 S.W.3d 473, 477 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

For the reasons previously discussed, the court is not persuaded that Hood and Rosescu should be allowed to testify as to producing cause. Neither should they be allowed to testify as to the other elements of design defect. Neither did any testing to establish, or otherwise scientifically explain, why the ladder as designed was unreasonably dangerous. Again, the

opinions appear to be that the ladder failed; therefore, it must have been unreasonably dangerous. Hood suggests that use of a steel blind rivet in place of the aluminum blind rivet would more than double the shear load capacity at the rivet, but he does nothing to show that the aluminum rivet was not sufficient. Doc. 73 at 20. He also mentions increasing the thickness of the front rail, increasing the rivet size, and incorporating additional bracing but does not otherwise describe those changes or why they are necessary. Id. Other than a conclusory allegation that the "changes would not be expected to significantly increase the cost of the ladder," he does not address the economic feasibility of his suggested changes. Id. Rosescu likewise points to the rivet, but has not done any testing or even identified specific testing that would establish the rivet was insufficient or establish that the proposed rivet would be sufficient. Doc. 74 at 8. Rosescu does not address the economic feasibility of his proposed alternate designs. Doc. 74. See Dewayne Rogers Logging, Inc. v. Propac Indus., Ltd., 299 S.W.3d 374, 384 (Tex. App.—Tyler 2009, pet. denied); Aqua-Flo, Inc., 23 S.W.3d at 478 (both noting that facts, not merely conclusory statements, are necessary to establish economic feasibility).

Plaintiff devotes lengthy sections of his responses to the contention that his experts were not required to build and test a prototype to prove safer alternative design. Doc. 65 at 20-24; Doc. 68 at 13-22. He overlooks that neither of his experts performed any testing to determine that the ladder was unreasonably dangerous as designed.[5] Unlike the expert in Coker v. Louisville Ladder, Inc., No. 4:08-CV-113, 2009 WL 2870030 (E.D. Va. May 26, 2009), cited by plaintiff, neither Hood nor Rosescu tested the hypothesis (that the rivet in question broke, causing the accident) with an exemplar ladder. And, this case is not like Freeman v. Case Corp., 118 F.3d 1011 (4th Cir. 1997), where the expert was able to perform various tests on the tractor to confirm that it did lurch when used as the plaintiff had used it and cited to specific published materials that guided his analysis in concluding that the tractor had been defectively designed. Rather, the conduct of Hood and Rosescu is like that of the expert in Alevromagiros v. Hechinger Co., 993 F.2d 417 (4th Cir. 1993), who merely gave his own subjective opinion and was not allowed to testify.

---

[5] Plaintiff's citations to Schmude v. Tricam Indus., Inc., 550 F. Supp. 2d 846 (E.D. Wis. 2008), and Stuhlmacher v. Home Depot U.S.A., Inc., No. 2:10-CV-00467-JTM-APR, 2013 WL 3201572 (N.D. Ind. June 21, 2013), are inapposite as they concern manufacturing defects. In Schmude, the existence of the defect was not disputed, 550 F. Supp. 2d at 850, and the defect was specific and unique and could not be duplicated. Id. at 853. As for Stuhlmacher, the qualifications of the expert were above and beyond the qualifications of Hood and Rosescu, 2013 WL 3201572, at *5, and based on the particular facts of the case, his theory did not require testing. Id. at 10.

14

V.

Order

The court ORDERS that defendant's motions to exclude expert testimony be, and are hereby, granted, and that neither Hood nor Rosescu will be allowed to testify in this action.

SIGNED February 10, 2021.

_____
JOHN McBRYDE
United States District Judge

15